1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

Shirley Marie Hampton,

              Plaintiff,

    v.

United Health Services, et al.,

              Defendants.

Case No. 2:20-cv-00457-RFB-BNW

**ORDER**

Presently before the Court is *pro-se* Plaintiff Shirley Hampton's motion to amend. ECF No. 14. For the reasons discussed below, the Court will grant Plaintiff's motion in part and deny it in part with leave to amend.

**I.       BACKGROUND**

By way of background, Hampton previously filed a complaint alleging that United Health Services (UHS) and Spring Mountain Treatment Center subjected her to retaliation and discrimination based on her race, color, religion, and age. ECF No. 2-1 at 4-6. Hampton asserted claims under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967. *Id*. at 3.

The Court allowed Hampton's retaliation claim against Spring Mountain Treatment Center to proceed and dismissed Hampton's other claims without prejudice, including all claims against UHS (because Plaintiff did not identify how UHS was involved in allegedly violating her rights). ECF No. 5 at 9. The Court gave Plaintiff until September 1, 2020 to amend her complaint. *Id*.

Hampton filed her motion to amend one day after the deadline on September 2, 2020, alleging claims against UHS only. ECF No. 14. Hampton seeks to cure the deficiencies in her original complaint and add a claim under the Genetic Information and Non-Discrimination Act

("GINA"). *Id*. However, Plaintiff appears to have accidentally dropped her claims against Spring Mountain Treatment Center, by not alleging any facts against it (but rather stating that she maintains her claims). *See id*. Accordingly, the Court will screen Plaintiff's proposed amended complaint and give her leave to file another complaint that contains *all* claims she wishes to bring.

## II.   DISCUSSION

### A.   Amendment

Generally, a party may amend its pleading once "as a matter of course" within twenty-one days of serving it, or within twenty-one days after service of a responsive pleading or motion under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id*. "The court considers five factors [under Rule 15] in assessing the propriety of leave to amend—bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011).

However, when the deadline for amending pleadings under a scheduling order has passed, the court's analysis must start with Rule 16(b). *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000) (court correctly applied Rule 16(b) because the time to amend pleadings lapsed before the party moved to amend); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992) (analysis begins with Rule 16(b) once the deadline to amend pleadings has passed). Under Rule 16(b)(4), a "schedule may be modified only for good cause and with the judge's consent." Unlike Rule 15(a)'s "liberal amendment policy[,] . . . Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment . . . [i]f that party was not diligent, the inquiry should end." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591 (2015) (internal quotations and citations omitted); *see also Mammoth Recreations*, 975 F.2d at 609-10 (no good cause for amendment when movant knew of facts and theory from the beginning of the case and waited until four months after the deadline for amendments passed to move to amend).

1    Here, the Court finds good cause exists for Hampton to amend her complaint, even

2    though it was late. Hampton filed her motion only one day late and seeks to add "significant new

3    information and corrections." ECF No. 14 at 1. Furthermore, Hampton, a *pro se* litigant, "recently

4    found out" that she may have a claim under GINA. *Id*. at 3. The Court finds that this shows

5    enough diligence to establish good cause. *See W. States Wholesale Nat. Gas Antitrust Litig.*, 715

6    F.3d at 737.

7    **B. Screening Standard**

8    Upon granting a request to proceed *in forma pauperis*, a court must screen the complaint

9    under 28 U.S.C. § 1915(e)(2). In screening the complaint, a court must identify cognizable claims

10   and dismiss claims that are frivolous, malicious, fail to state a claim on which relief may be

11   granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §

12   1915(e)(2). Dismissal for failure to state a claim under § 1915(e)(2) incorporates the standard for

13   failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Watison v. Carter*, 668

14   F.3d 1108, 1112 (9th Cir. 2012). To survive § 1915 review, a complaint must "contain sufficient

15   factual matter, accepted as true, to state a claim for relief that is plausible on its face." *See*

16   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court liberally construes *pro se* complaints and

17   may only dismiss them "if it appears beyond doubt that the plaintiff can prove no set of facts in

18   support of his claim which would entitle him to relief." *Nordstrom v. Ryan*, 762 F.3d 903, 908

19   (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

20   In considering whether the complaint is sufficient to state a claim, all allegations of

21   material fact are taken as true and construed in the light most favorable to the plaintiff. *Wyler*

22   *Summit P' ship v. Turner Broad. Sys. Inc.*, 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted).

23   Although the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff

24   must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S.

25   544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.*

26   Unless it is clear that the complaint's deficiencies could not be cured through amendment, a *pro*

27   *se* plaintiff should be given leave to amend the complaint with notice regarding the complaint's

28   deficiencies. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

1

### C. Screening the Amended Complaint

2

Hampton brings claims against her previous employer, UHS, for race discrimination,

3

retaliation, and a GINA violation. ECF No. 14. Hampton also wishes to "maintain[] the

4

allegations against the same defendant from the original complaint," which included color,

5

religion, and age discrimination. ECF 14 at 1. *See* ECF No. 2-1 at 4-6.

6

### 1. The Genetic Information and Non-Discrimination Act

7

Hampton alleges UHS violated GINA during Hampton's onsite health screening. ECF No.

8

14 at 3. The health screening took place shortly after UHS hired Hampton as a case manager on

9

May 14, 2020. *Id*. Hampton alleges that a nurse asked Hampton about her family health history

10

and age in an open area of the facility. *Id*. The nurse also drew Hampton's blood. *Id*. Hampton

11

alleges she does not have any health problems that would warrant this examination. *Id.* And

12

Hampton alleges that she did not volunteer for the exam. *Id*.

13

The purpose of GINA is to prevent employers from making a "predictive assessment

14

concerning an individual's propensity to get an inheritable genetic disease or disorder based on

15

the occurrence of an inheritable disease or disorder in [a] family member." *Poore v. Peterbilt of*

16

*Bristol, L.L.C.*, 852 F. Supp. 2d 727, 730 (W.D. Va. 2012).

17

The Ninth Circuit has not considered the prima facie elements of a GINA violation. But

18

the statute's plain language prohibits an employer from discriminating or taking adverse action

19

against an employee because of genetic information. 42 U.S.C. § 2000ff1(a). The Act also

20

prohibits an employer from requesting, requiring, or purchasing genetic information concerning

21

an employee. § 2000ff1(b). Under GINA, genetic information means information about (1) an

22

individual's genetic test, (2) genetic tests of family members of such individual, or (3) the

23

manifestation of a disease or disorder in family members of such individual. 42 U.S.C. § 2000ff

24

(4).

25

Here, the Court finds that Hampton states a colorable claim under GINA. During the

26

onsite health screening, UHS appears to have "requested genetic information concerning an

27

employee." *See* 42 U.S.C. § 2000ff1(b). Asking "very personal family history health questions"

28

may constitute a request for genetic information under GINA because such a question is likely

meant to seek information about the "manifestation of a disease or disorder in family members" of Hampton. *See* § 2000ff (4); *Lee v. City of Moraine Fire Dep't*, No. 3:13CV00222, 2014 WL 1775621, at *5 (S.D. Ohio May 2, 2014) (finding a GINA violation for asking whether employee's primary relative has a history of prostate cancer), *report and recommendation adopted*, No. 3:13-CV-222, 2014 WL 2583773 (S.D. Ohio June 9, 2014). Accordingly, the Court will allow Hampton's GINA claim to proceed.

**2. Race Discrimination**

Hampton seeks to cure the deficiency in her race discrimination claim, which the Court previously dismissed without prejudice. ECF No. 14; ECF No. 5 at 4-5. Hampton alleges that UHS management and her co-workers subjected her to bullying, false allegations, and discriminatory stereotyping. ECF No. 14 at 2.[1] Hampton believes that she was "specifically singled out due to her race and color." *Id*. Hampton alleges that her white colleagues were not subject to discriminatory stereotyping or false allegations. *Id*. Her colleagues could ask questions without "being labeled as argumentative, difficult or unable to grasp the basic training concepts." *Id*. Hampton further alleges that "in a prior training class[,] a non-African American male colleague could complete his training" without being subject to discrimination or harassment. *Id*.

Under 42 U.S.C. § 2000e-2(a)(1), commonly referred to as Title VII, it is illegal for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

It is also illegal to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(2).

---

[1] While Hampton also alleges she was ultimately terminated from her job, she does not allege that this was a result of being discriminated against. Rather, her allegation that she was terminated is the basis of her retaliation claim.

To establish a prima facie case of employment discrimination based on race, color, religion, sex, or national origin under Title VII, a plaintiff must show that (1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subject to adverse employment action; and (4) similarly situated individuals outside of her protected class were treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Here, Hampton failed to plead sufficient facts to show that she was subject to an adverse employment action under the *McDonnell Douglas Corp.* test. *See* 411 U.S. at 802. While Hampton alleges that she was bullied and subject to false allegations and discriminatory stereotyping, she does not plead facts that show that the alleged harassment "materially affect[ed] the compensation, terms, conditions, or privileges of . . . [her] employment." *See* ECF No. 14 at 2-3; *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008). Accordingly, the Court finds that Hampton does not state a claim for race discrimination race under the *McDonnell Douglas Corp.* framework. The Court will dismiss Hampton's race discrimination claim against UHS without prejudice and with leave to amend.

If Hampton wishes to amend her complaint, she must allege facts sufficient to show that (1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subject to adverse employment action that materially affected the compensation, terms, conditions, or privileges of her employment; and (4) similarly situated individuals outside of her protected class were treated more favorably. *See McDonnell Douglas Corp.*, 411 U.S. at 802.

### 3. Hostile Work Environment

Hampton did not explicitly bring a hostile work environment claim. However, her complaint suggests that this may be a claim she is attempting to bring. Accordingly, the Court will construe her complaint as attempting to state a claim for hostile work environment and analyze this claim. As discussed below, the Court does not find that Hampton pleads sufficient facts to make out a claim for hostile work environment. Nonetheless, the Court hopes that the following analysis will be helpful to Hampton if she chooses to amend her complaint.

An employer can violate Title VII by creating a hostile work environment. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004). A hostile work environment violates

"Title VII's guarantee of the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Id.*

To show a hostile work environment, a plaintiff must show "(1) that [s]he was subjected to verbal or physical conduct of a racial . . . nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 686 (9th Cir. 2017).

A plaintiff must plead facts to show that the work environment was both subjectively and objectively hostile. *Id.* at 687. The perspective of a reasonable person belonging to the plaintiff's protected class determines objective hostility. *Id.*

Hostile work environment claims are subject to a "demanding" standard. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Therefore, courts must deny complaints based on "the ordinary tribulations of the workplace, such as the sporadic use of abusive language." *Id.* Courts look at the conduct's frequency, severity, and "whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 787-88. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" are not sufficient. *Id.* at 788. Still, "the harassment need not be so severe as to cause diagnosed psychological injury." *Reynaga*, 47 F.3d at 687.

Here, Hampton does not state a colorable hostile work environment claim. *See id.* at 686.

Hampton does not plead sufficient facts to meet the first element of a hostile work environment. *See id.* Hampton does not allege that being labeled argumentative, difficult, or unable to understand training concepts are comments of a racial nature. *See* ECF No. 14 at 2. And Hampton does not identify what she means when she says she was subject to "discriminatory negative stereo[types]." *Id.*

Hampton does, however, plead enough facts to meet the second element. *See Reynaga*, 847 F.3d at 686. Hampton found the comments unwelcome because she "reported all incidents and concerns immediately to her [s]upervisor . . . each time the incident took place." ECF No. 14 at 2. Hampton's work environment was, therefore, at least subjectively hostile. *See Reynaga*, 847

F.3d at 687 ("It is undisputed that [plaintiff] perceived his workplace to be hostile, as evidenced by his repeated complaints . . . .").

Hampton does not meet the third element because she has not pled enough facts to show that the conduct was "sufficiently severe or pervasive" to affect the conditions of her employment. *See Faragher*, 524 U.S. at 787. Hampton does not explain how being labeled argumentative, difficult, or unable to understand training concepts affected her ability to participate in training. ECF No. 14 at 2; *see Faragher*, 524 U.S. at 788. Additionally, Hampton does not show that these comments rise to the level of being "threatening or humiliating." *See Faragher*, 524 U.S. at 787-88. Rather, the comments directed at Hampton appear to be "mere offensive utterance[s]." ECF No. 14 at 2; *See Faragher*, 524 U.S. at 788. At least as currently pled, it does not appear that such offensive comments are actionable under Title VII. *See Faragher*, 524 U.S. at 788.

The Court understands that "[t]he omnipresence of race-based attitudes and experiences in the lives of black Americans [may cause] even nonviolent events to be interpreted as degrading, threatening, and offensive." *McGinest*, 360 F.3d at 1116. Still, Hampton has not pled sufficient facts to state a plausible claim. *See Iqbal*, 556 U.S. at 678. Accordingly, the Court will dismiss Hampton's hostile work environment claim against UHS without prejudice and with leave to amend.

If Hampton wishes to amend her complaint to state a claim for hostile work environment under Title VII, she must allege facts sufficient to show that "(1) that [s]he was subjected to verbal or physical conduct of a racial . . . nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive work environment." *Reynaga*, 847 F.3d at 686.

### 4. Discrimination Based on Color, Religion and Age

In her original complaint, Hampton asserted claims for discrimination based on color, religion, and age. ECF No. 2-1 at 4-6. And Hampton states in her amended complaint that she "maintains the allegations against the same defendant from the original complaint." ECF No. 14 at 1.

However, Hampton has not alleged any facts in her amended complaint to support these claims. *See Id*. at 2-3. As the Court advised Hampton in its prior order, "each claim and the involvement of each defendant must be alleged sufficiently [in Hampton's amended complaint]. The court cannot refer to a prior pleading or to other documents to make Hampton's amended complaint complete. The amended complaint must be complete in and of itself without reference to prior pleadings or to other documents." ECF No. 5 at 9. Accordingly, Hampton's complaint currently does not contain any claims based on color, religion, or age discrimination.

If Hampton wishes to amend her complaint, she must allege facts sufficient to show that (1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subject to adverse employment action; and (4) similarly situated individuals outside of her protected class were treated more favorably. *See McDonnell Douglas Corp.*, 411 U.S. at 802. Hampton is also advised to refer to the Court's prior screening order for more information about these claims.

**5. Retaliation**

Hampton also brings a retaliation claim against UHS. *Id*. at 2-3. Hampton alleges she reported each instance of sexual or racial harassment to her supervisor. *Id*. Hampton alleges she was suspended "on the same day of her last complaint and then terminated." *Id*. at 3.

It is unlawful for an employer to discriminate against individuals because they "opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C.A. § 2000e-3(a).

To establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) she had engaged in protected activity; (2) she was thereafter subjected by her employer to an adverse employment action; and (3) a causal link existed between the protected activity and the adverse employment action. *Porter v. California Dep't of Corr.*, 419 F.3d 885, 894 (9th Cir. 2005). Employers are prohibited from retaliating against employees for voicing complaints about discrimination. *Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 276 (2009).

1      Here, the Court finds that Hampton pleads a colorable retaliation claim under 42 U.S.C.A.
§ 2000e-3(a). Hampton engaged in protected activity by complaining to her employer that she
was subject to sexual harassment and racially motivated comments. ECF No. 14 at 3; *see*
*Crawford*, 555 U.S. at 276. On the same day of her last complaint, Hampton was subject to
adverse employment action because she was suspended and then ultimately terminated. ECF No.
14 at 3. A causal link exists between the protected activity and the adverse employment action
because UHS suspended Hampton on the same day that she complained to her supervisor. *See*
*Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("temporal proximity between an
employer's knowledge of protected activity and an adverse employment action [is] sufficient
evidence"). Accordingly, Hampton's retaliation claim may proceed against UHS.

**III.    CONCLUSION**

IT IS THEREFORE ORDERED that Hampton's motion to amend (ECF No. 14) is
GRANTED in part and DENIED in part. It is granted to the extent that Plaintiff's claims under
GINA and for retaliation against UHS shall proceed. It is denied in all other respects.

IT IS FURTHER ORDERED that Hampton may amend her complaint if she so chooses.
**If Hampton wishes to amend her complaint, she must do so by November 4, 2020. Hampton
is again advised that if she files an amended complaint, it must be complete in and of itself.
All claims Hampton wishes to bring must be contained in the amended complaint. Thus, the
Amended Complaint would need to include (1) the retaliation claim against Spring
Mountain (as previously approved by this court), (2) the retaliation and GINA claims
against UHS (as this order allows Plaintiff to proceed on those claims), and (3) any other
claim she wishes to bring against either defendant and which this Court has analyzed in this
Order. The Court will not refer to any prior complaint or other document to determine if
Hampton has sufficiently stated her claims.**

DATED: October 5, 2020

BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE